# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT JAHODA and MATTHEW KOLESAR, <br><br> Plaintiffs, <br><br> v. <br><br> RITE AID CORPORATION, <br><br> Defendant. | Case No. 2:20-CV-240 |

## COMPLAINT

Plaintiffs Robert Jahoda and Matthew Kolesar ("Plaintiffs"), through their undersigned counsel, bring this complaint against Defendant Rite Aid Corporation ("Defendant"), and allege as follows:

## INTRODUCTION

1. Plaintiffs bring this action against Defendant under Title III of the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12101 *et seq.* and its implementing regulations, and the Rehabilitation Act of 1973 (the "Rehab Act"), 29 U.S.C. § 701 *et seq.* and its implementing regulations, in connection with Defendant's failure to offer blind patrons the full and equal enjoyment of its health screening kiosks.

2. Since the enactment of the ADA thirty years ago, all public accommodations have been required to ensure that their facilities are fully accessible to individuals with disabilities, including sight-impaired individuals.

3. The Rehab Act, which was enacted nearly fifty years ago, forbids programs or activities that receive Federal financial assistance from discriminating against otherwise qualified individuals with disabilities.

4. Each Plaintiff is a legally blind "individual with a disability" as defined by the ADA, 42 U.S.C. § 12102(2).

5. As explained in detail below, Plaintiffs were denied full and equal access to Defendant's facilities because of Defendant's use of inaccessible health screening kiosks.

6. Defendant violated, and continues to violate, the ADA and the Rehab Act through its denial of full and equal access to, and enjoyment of, Defendant's facilities, services, privileges, advantages, and accommodations.

7. Plaintiffs seek the following declaratory and injunctive relief: (1) a declaration that Defendant's inaccessible health screening kiosks violate the ADA and the Rehab Act as described in this complaint; and, (2) an injunction requiring Defendant to update or replace its health screening kiosks so that they are fully and independently accessible to blind or other vision impaired individuals.

## JURISDICTION AND VENUE

8. This Court has federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 for claims arising under the ADA and the Rehab Act.

9. Plaintiffs' claims asserted in this complaint arose in this judicial district and Defendant does substantial business in this judicial district.

10. Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2) in that this is the judicial district in which a substantial part of the events and/or omissions at issue occurred.

## PARTIES

11. Plaintiff Matthew Kolesar is and, at all times relevant hereto, was a resident of Girard, PA. As described above, Plaintiff Kolesar is a legally blind individual.

12. Plaintiff Robert Jahoda is and, at all times relevant hereto, was a resident of Ambridge, PA. As described above, Plaintiff Jahoda is a legally blind individual.

13. As legally blind individuals, Plaintiffs are members of a protected class under the ADA, 42 U.S.C. § 12102(2) and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq*.

14. Defendant Rite Aid Corporation, Inc. is a corporation organized under Delaware law, and is headquartered at 30 Hunter Lane, Camp Hill, Pennsylvania 17011.

15. Defendant is a public accommodation pursuant to 42 U.S.C. §12181(7).

## FACTUAL ALLEGATIONS

### Defendant's Health Screening Kiosks

16. On information and belief, higi health screening kiosks are present in thousands of Defendant's Rite Aid stores.[1]

17. Beginning in 2014, Defendant started to offer health screening kiosks in its stores that individuals can freely use to measure their weight, body mass index ("BMI"), pulse, and/or blood pressure. The kiosks are offered as a purported preventative health measure to help customers to better track health statistics so they can monitor for conditions such as diabetes and hypertension.

---

[1] See https://higi.com/2014/02/higi-announces-agreement-with-rite-aid/, last retrieved 02/12/2020.

18. The kiosks are equipped with a variety of high-tech features and capabilities, including the ability to sync user results to a companion mobile application. The kiosks are also purportedly HIPAA compliant and can display information in multiple languages.

19. However, there is only one way to interact with and use the kiosks: a touchscreen.

20. As shown in the image below, the kiosks are inaccessible to individuals with visual disabilities because the interactive touch screen is the only way to use the kiosk:



*Figure 1 – Defendant's health screening kiosk.*

21. The kiosks do not have any tactilely discernible input controls such as a keyboard or keypad that would permit an individual with a visual disability to interact with and use the offered services and features.

22. Although the kiosks appear to be capable of speech output and are equipped with audio speakers, these capabilities are meaningless to individuals with visual disabilities who cannot access the kiosk in the first instance because of the touch screen barrier.

23. To the extent an individual with a visual disability can access a kiosk and utilize its features, not all functions and displayed information are audible and delivered through speech output.

24. Indeed, because of privacy and HIPAA considerations, the kiosks will not output audio of the user's health results, including weight, BMI, pulse, and blood pressure: "The higi Station is designed to provide health stats only to the user seated at the touchscreen, which is purposely angled so that people around the station can't see the information displayed on it. higi [sic] does not share personal health information on the top screen or over the station's audio."[2]

### Plaintiffs' Experiences

25. Plaintiff Kolesar visited Defendant's store located at 9141 Ridge Road, Girard, PA 16417(the "Girard Location") in January of 2020.

26. The Girard Location is within the area that Plaintiff Kolesar typically travels as part of his regular activities.

27. When Plaintiff Kolesar attempted to access and use the health screening kiosk at the Girard Location, he was unable to access or use the kiosk's services or features because it is inaccessible to the visually impaired.

28. Plaintiff Jahoda visited Defendant's store located at 925 Merchant Street, Ambridge, PA 15003 (the "Ambridge Location") in January of 2020.

---

[2] https://higi.desk.com/customer/en/portal/articles/695436--is-the-higi-station-private-?b_id=4768 (last accessed February 14, 2020).

29. The Ambridge Location is within the area that Plaintiff Jahoda typically travels as part of his regular activities.

30. When Plaintiff Jahoda attempted to access and use the health screening kiosk at the Ambridge Location, he was unable to access or use the kiosk's services or features because it is inaccessible to the visually impaired.

31. The Ambridge Location offers a health screening kiosk, as shown in the image below:



*Figure 2 – the Ambridge Location's health screening kiosk*

32. When Plaintiffs attempted to access and use the health screening kiosks at the Ambridge Location and Girard Location, Plaintiffs were unable to access or use the kiosks' services or features because they are inaccessible to the visually impaired.

33. Unfortunately, to date, Plaintiffs have not had the practical ability to use the health screening kiosks at Defendant's stores, because, as currently designed, the kiosks are inaccessible.

34. Despite Defendant's inaccessible health screening kiosks, Plaintiffs intend to continue patronizing the Ambridge and Girard Locations on a regular basis because these locations are near their homes and within their usual areas of travel.

35. Nevertheless, Plaintiffs are and will be deterred from returning to and accessing the health service kiosks so long as they remain non-compliant and inaccessible, and so long as Defendant continues to employ the same policies and practices that have led, and in the future will lead, to inaccessible facilities and denial of accessibility.

**Defendant Denies Individuals With
Visual Disabilities Full And Equal Access**

36. Defendant is engaged in the ownership, management, operation, and development of retail stores throughout the United States, including, upon information and belief, approximately 2,469 stores across the country.

37. On information and belief, Defendant has centralized policies and practices regarding the operation, design, and accessibility of its stores. Despite this, Defendant does not ensure that its customers are afforded full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations offered by Defendant.

38. Defendant has failed to provide any option for Plaintiffs to independently access and use the health screening kiosks in its stores.

39. Plaintiffs and other visually impaired individuals are thus denied full and equal enjoyment to services and features of the health screening kiosks because the kiosks must be operated exclusively using a visual interface accessible only to sighted individuals.

40. Because the kiosks are not independently operable by individuals with visual disabilities, Plaintiffs and other visually impaired individuals are segregated and otherwise treated

7

differently insofar as they cannot use the kiosks without the assistance of a third-party, unlike sighted individuals.

41. Further, these third-parties have no training or incentive to offer the full range of features available in the health screening kiosks.

42. More distressing, due to the sensitive and private nature of the health information that is displayed on a kiosk's screen and provided to users, and because the kiosks do not have any private audio output capability for health results, a third-party *is required* in order for that information to be provided to an individual with a visual disability. This functional limitation deprives Plaintiffs and other visually impaired individuals of privacy and undermines HIPAA protections.

43. Accordingly, the Girard and Ambridge Locations, along with all of Defendant's other store locations in which a health screening kiosk is offered, are non-compliant with the ADA and the Rehab Act.

44. Absent the relief requested in this matter, Plaintiffs will continue to be denied full and equal enjoyment of Defendant's health screening kiosks

## CAUSE OF ACTION

### COUNT I: VIOLATION OF TITLE III OF THE ADA

45. The allegations set forth in the previous paragraphs are incorporated by reference.

46. Defendant has discriminated and continues to discriminate against Plaintiffs by failing to make its facilities and services fully accessible to, and independently usable by, individuals with visual disabilities, specifically, because of Defendant's inaccessible health screening kiosks.

47. Plaintiffs have been, and continue to be, denied full and equal access to Defendant's services and facilities due to the inaccessible health screening kiosks.

48. Defendant's ongoing failure to provide Plaintiffs full and equal enjoyment of the health screening kiosks constitutes unlawful discrimination on the basis of a disability in violation of 42 U.S.C. § 12182(a).

49. Defendant's conduct is ongoing and continuous, and Plaintiffs have been harmed by Defendant's conduct.

50. Unless Defendant is restrained from continuing its ongoing and continuous course of conduct, Defendant will continue to violate the ADA and will continue to inflict injury upon Plaintiffs and others with visual disabilities.

51. Given that Defendant has not complied with the ADA's requirements to make its facilities fully accessible to, and independently usable by, individuals with visual disabilities, Plaintiffs invoke their statutory rights to declaratory and injunctive relief, as well as costs and attorneys' fees.

## **COUNT II: VIOLATION OF THE REHAB ACT**

52. The allegations set forth in the previous paragraphs are incorporated by reference.

53. The Rehab Act forbids programs or activities that receive Federal financial assistance from discriminating against qualified individuals with disabilities.

54. Plaintiffs are otherwise qualified individuals with disabilities within the meaning of the Rehab Act.

55. Defendant is subject to the Rehab Act because it is a program or activity that receives Federal financial assistance administered by the U.S. Department of Health and Human Services, including Medicare provider payments from the centers for Medicare/Medicaid Services.

56. Defendant has violated and continues to violate the Rehab Act by denying individuals with visual disabilities the full and equal services, facilities, privileges, advantages, and accommodations of Defendant's stores.

57. Defendant's conduct has harmed Plaintiffs and will continue to harm Plaintiffs unless and until Defendant is ordered by this Court to make its stores accessible to individuals with visual disabilities.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request judgment as follows:

a. A declaratory judgment that Defendant is in violation of the specific requirements of the ADA and the Rehab Act as described above;

b. A permanent injunction which directs Defendant to take all steps necessary to bring all of its health screening kiosks into full compliance with the requirements set forth in the ADA and the Rehab Act, so that they are fully accessible to, and independently usable by, individuals with visual disabilities, and which further directs that the Court shall retain jurisdiction for a period to be determined after Defendant certifies that all of its health screening kiosks are fully in compliance with the relevant requirements of the ADA and the Rehab Act to ensure that Defendant has adopted an institutional policy and practice that will in fact cause Defendant to remain in compliance with the law;

c. Payment of costs of suit;

d. Payment of reasonable attorneys' fees and/or nominal damages; and,

e. The provision of whatever other relief the Court deems just, equitable and appropriate.

Dated: February 14, 2020                    Respectfully Submitted,


                                            By: /s/ *R. Bruce Carlson*
                                            R. Bruce Carlson
                                            Kelly K. Iverson
                                            Bryan A. Fox
                                            **CARLSON LYNCH LLP**
                                            1133 Penn Avenue, 5th Floor
                                            Pittsburgh, PA 15222
                                            Tel: 412-322-9243
                                            Fax: 412-231-0246
                                            bcarlson@carlsonlynch.com
                                            kiverson@carlsonlynch.com
                                            bfox@carlsonlynch.com

                                            *Counsel for Plaintiffs*